TEXTO COMPLETO DE LA SENTENCIA
Comparecen las partes querelladas, Alberic Dodge Chrysler & Jeep, Inc. y Daimler Chrysler Corp., quienes mediante sendos recursos de revisión nos solicitan la revisión de una Resolución emitida por el Departamento de Asuntos del Consumidor (DACO), Región de San Juan, notificada el 5 de noviembre de 2003. En la Resolución recurrida DACO decreta la resolución de un contrato de arrendamiento de obra entre Alberic y Allstate Insurance y ordena a Alberic y a Chrysler pagar a los querellantes la cantidad de catorce mil ochenta y siete dólares con noventa y un centavos ($14,087.91).
Por los fundamentos que más adelante exponemos, se modifica la Resolución recurrida.
I
El 22 de diciembre de 1999, Juan Redondo Díaz y Nélida Jiménez (en adelante Sra. Jiménez) adquirieron de Bella Retail Group, Inc., haciendo negocios como Flagship Dealear (en adelante Flagship), mediante un contrato *75 de arrendamiento financiero con First Leasing, un vehículo de motor marca Chrysler, modelo Caravan Sport, número de serie 1C4GP45G7YB598563, tablilla DVN-270. El vehículo tenía una garantía del manufacturero para cubrir la reparación gratuita de piezas y mano de obra de los desperfectos de producción hasta tres (3) años o treinta y seis mil (36,000) millas, lo que ocurriera primero.
En agosto de 2000, la Sra. Jiménez se dirigía a su trabajo en el vehículo en horas de la mañana en un día de lluvia cuando se encontró que el puente que da acceso a la urbanización donde reside estaba inundado. La. Sra. Jiménez decidió cruzar el puente. Luego de cruzar el puente, el vehículo se apagó. Después de un tiempo, el vehículo encendió y se pudo poner en marcha nuevamente. Al encenderlo, la Sra. Jiménez notó que se había activado la señal de “check engine” y que el vehículo hacía amagos de apagarse. Ese mismo día, los querellantes llamaron al departamento de servicio de Flagship, los cuales le dieron una cita para el 12 de septiembre de 2000. Los querellantes llevaron el vehículo el día de la cita y el mismo permaneció en el taller hasta finales de octubre de 2000. Chrysler pagó un vehículo alquilado a los querellantes para que lo utilizaran durante una semana.
Durante la estadía del vehículo en el taller de Flagship, personal de Flagship desmontó el motor del vehículo. Luego de revisar el vehículo, representantes de Flagship se reunieron con los querellantes y les informaron que había entrado agua a las partes internas del motor a través del respiradero que nutre aire al motor causando graves daños al mismo. Le informaron que estimaron el trabajo de reparación del vehículo en seis'mil setenta y ocho dólares con veinticuatro centavos ($6,078.24) y que la reparación no estaba cubierta por la/garantía del vehículo porque los daños al motor fueron causados por la negligencia de los querellantes em el uso del mismo e inundación. El manual de garantía de Chrysler que le aplica al vehículo de los querellantes exime de la cobertura de reparación de daños causados por factores ambientales causados por la naturaleza como inundaciones o cuando es operado negligentemente. Flagship y Chrysler nunca entregaron por escrito su posición de negar o invalidar la garantía del vehículo.
La compañía de seguro de los querellantes, Allstate Insurance, en representación de los mismos, contrató la reparación del vehículo con Alberic, centro de servicio autorizado por Chrysler, por la cantidad de tres mil doscientos ochenta y cuatro dólares con veinticuatro centavos ($3,284.24). El estimado de trabajo de Alberic no incluyó la reparación del árbol de eleva, incluido en el estimado de Flagship. El querellante pagó el deducible de quinientos dólares ($500.00) y Allstate cubrió el resto de los gastos de la reparación. A finales de octubre de 2000, el vehículo fue transportado en grúa desde el taller de Flagship, donde había permanecido desde el 12 de septiembre, a las facilidades de Alberic para las reparaciones. El 29 de diciembre de 2000, el vehículo fue entregado a los querellantes.
A pesar de las reparaciones realizadas, el vehículo se calentaba y tenía escapes de aceite y coolant. El 2 de enero de 2000, la unidad fue llevada nuevamente a Alberic para ser reparada. Allí se encontró que tenía el radiador roto y una fuga de aceite en el crank del motor. La reparación consistió en la sustitución del radiador y el sellado del crank. Chrysler otorgó garantía sobre la reparación efectuada. El vehículo fue entregado el 9 de enero de 2001 a los querellantes.
El 22 de enero de 2001, el vehículo fue llevado en grúa a Alberic luego de no encender cuando la querellante se disponía a regresar a su residencia a altas horas de la noche. Personal de Alberic diagnosticó que las bombas de gasolina y del servoguía (“power steering”) estaban defectuosas. Chrysler otorgó garantía sobre la reparación efectuada. El vehículo fue entregado el 29 de enero de 2001 a los querellantes.
El vehículo dejaba de encender en ocasiones y se apagaba. La querellante descubrió que si esperaba por algún intervalo de tiempo, el vehículo volvía a encender. El vehículo dejó de encender por completo y fue llevado nuevamente en grúa a Alberic el 26 de febrero de 2001. Alberic remplazó la batería bajo garantía.
El vehículo continuó dejando de encender en ocasiones. El 22 de abril de 2001, la unidad se volvió a apagar *76 ¡cuando la querellante se disponía a llevar a su hija a una actividad. Al día siguiente el vehículo fue llevado a Alberic, donde se encontró un fallo en el motor debido a la baja compresión de los cilindros del motor. La reparación consistió en la sustitución del árbol de eleva, recondicionamiento de las tapas y sustitución de las juntas del motor. La reparación fue cubierta bajo la garantía del vehículo. La unidad fue entregada el 30 de abril de 2001.
El 25 de abril de 2001, el vehículo manifestó problemas con el marcamillas, medidor de combustible, operadores de las ventanas, sistema de aire acondicionado, se sentían golpes en la transmisión y se calentó.
Los querellantes le solicitaron a Chrysler y a Flagship cambiar la unidad, ya que la condición de apagarse y no encender no había podido ser reparada a pesar de los intentos de Alberic. Chrysler y Flagship se opusieron al cambio.
Los querellantes confrontaron múltiples problemas relacionados con los desperfectos del vehículo. El Sr. Redondo le cedió su vehículo a la Sra. Jiménez para que ella no tuviera que ausentarse de su trabajo por motivos de las reparaciones del vehículo. El Sr. Redondo solicitaba transportación a conocidos para cumplir con sus obligaciones durante el tiempo que el vehículo permanecía en el taller para reparaciones, excepto la semana que Chrysler le pagó el alquiler de un vehículo. La condición del vehículo mantenía a los querellantes en tensión por los inconvenientes y molestias, debido a la incertidumbre del funcionamiento del carro. Cuando el vehículo dejaba de encender, la Sra. Jiménez se veía imposibilitada de llevar a cabo las tutorías, las cuales daba después de horas de trabajo.
El 25 de abril de 2001, los querellantes radicaron una querella contra Alberic, First Leasing y Chrysler en DACO, en la cual solicitaron la resolución del contrato de compraventa y la devolución de prestaciones. La querella fue enmendada posteriormente para incluir a Flagship como parte querellada.
El 26 de abril de 2001, ante la inhabilidad de Alberic de arreglar el vehículo y de no tener método alterno de transportación, los querellantes se vieron forzados a adquirir otro automóvil.
El 18 de junio de 2001, el vehículo fue inspeccionado por un investigador de DACO. Durante la prueba de carretera, el inspector se vio obligado a interrumpir la prueba por desperfectos pronunciados en el automóvil que incluyeron golpes en la transmisión, mal funcionamiento del marcamillas y los abanicos de enfriamiento. Alberic ofreció corregir los desperfectos del vehículo; sin embargo, los querellantes insistieron en devolver el vehículo y desistir de la cuenta. El informe del investigador no fue objetado por ninguna parte.
El 27 de junio de 2001, los querellantes entregaron el vehículo a First Leasing. Los querellantes habían realizado dieciséis (16) pagos de quinientos noventa y cuatro dólares ($594.00), dejando de pagar los meses de abril, mayo y junio de 2001. First Leasing vendió el vehículo a un tercero por quince mil quinientos dólares ($15,500.00) y le cobró a los querellantes la cantidad de ocho mil ochocientos noventa y nueve dólares con noventa y un centavos ($8,899.91) por concepto del balance de la deuda no satisfecha en la venta. Los querellantes no pagaron el balance a First Leasing. Esta última reportó el incumplimiento de los querellantes a las agencias de crédito. El crédito de los querellantes se vio negativamente afectado impidiendo que pudieran refinanciar su hogar.
Después de un extenso proceso de descubrimiento de prueba, el 27 de agosto de 2002 y el 20 de septiembre de 2004, DACO celebró vistas administrativas. El 20 de mayo de 2003, DACO notificó una Resolución ordenando a Alberic pagar a los querellantes la cantidad de catorce mil ochenta y siete dólares con noventa y un centavos ($14,087.91) y desestimando la querella en cuanto a First Leasing, Flagship y Chrysler. En la Resolución, DACO concluyó que las reparaciones subsiguientes a la primera intervención de Alberic y condiciones defectuosas reflejadas en el informe del investigador fueron el resultado de la intervención de Alberic *77 por diagnósticos erróneos y negligencia en el cumplimiento de su obligación de reparar el vehículo en virtud de un contrato de arrendamiento de obra entre Alberic y Allstate, en representación de los querellantes.
El 9 de junio de 2003, Alberic presentó una Moción de Reconsideración. La misma fue rechazada de plano. El 7 de julio de 2003, Alberic radicó una Moción en solicitud de Relevo de Resolución.
El 18 de julio de 2003, DACO emitió una Resolución dejando en suspenso los efectos de la Resolución del 19 de mayo de 2003. Posteriormente, el 21 de octubre de 2003, emitió una nueva Resolución, en la que estableció la responsabilidad solidaria de Alberic y de Chrysler por los daños y perjuicios debido al incumplimiento contractual al no conformar el vehículo a la garantía del mismo a tenor con el Reglamento de Garantías de Vehículos de Motor del 30 de septiembre de 1992, 10 R.P.R. § 250.1701. Además, responsabilizó a Alberic por incumplimiento del contrato de arrendamiento de obra de acuerdo al Artículo 1077 del Código Civil, 31 L.P.R.A. § 3052. Se mantuvo la desestimación en cuanto a First Leasing y Flagship. La Resolución notificada no contenía la página número 3 y esto motivó que tuviera que notificarse nuevamente el 5 de noviembre de 2003.
Chrysler solicitó reconsideración el 25 de noviembre de 2003. DACO no se expresó sobre la misma.
Inconformes, Chrysler y Alberic recurren ante nos con sendos Recursos de Revisión presentados el 5 de diciembre de 2003 y el 9 de enero de 2004, respectivamente. En su escrito de revisión, Chrysler señaló los siguientes errores:

“1. Erró el Honorable Departamento de Asuntos del Consumidor como cuestión de derecho al incluir a Chrysler como responsable solidariamente con Alberic por concepto de daños y perjuicios.

2. Erró el Honorable Departamento de Asuntos del Consumidor como cuestión de derecho al imponer arbitrariamente una medida de daños en violación de su propio reglamento.

3. Erró el Honorable Departamento de Asuntos del Consumidor como cuestión de derecho, en esencia, al decretar la rescisión del contrato de compraventa contra Chrysler en contravención de las leyes y jurisprudencia aplicable.

4. Erró el Honorable Departamento de Asuntos del Consumidor como cuestión de derecho al imponerle el pago de honorarios de abogado a Chrysler. ”

Por su parte, Alberic planteó los siguientes errores:

“1. Erró el Honorable Departamento de Asuntos del Consumidor al desestimar la querella contra el proveedor de la unidad Bella Retail Group H/N/C Flagship Dealer.

2. Erró el Honorable Departamento de Asuntos del Consumidor al concederle a los querellantes el pago de daños y perjuicios solidariamente, entre ADCJ, INC y Daimler Chrysler.

3. Erró el Honorable Departamento de Asuntos del Consumidor al concederle un remedio a la parte querellante sin considerar la Ley Complementaria de Vehículos de Motor, Ley 330 del 2 de septiembre de 2000.

4. Erró el Honorable Departamento de Asuntos del Consumidor al establecer y concluir que ADCJ, Inc. le es responsable a la parte querellante por daños y perjuicios. ”

II
Antes de entrar a discutir los errores planteados es necesario atender el asunto de nuestra jurisdicción para *78 atender los recursos de revisión sometidos por las partes. Las cuestiones de jurisdicción son privilegiadas y deben ser resueltas con preferencia y de carecer un tribunal de jurisdicción, lo único que puede hacer es así declararlo. Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1989). La falta de jurisdicción no puede ser subsanada, ni el tribunal puede abrogársela, teniendo los tribunales el ineludible deber de examinar su propia jurisdicción. Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991); Pueblo v. Miranda Colón, 115 D.P.R. 511, 513 (1984).
La Ley de Procedimiento Administrativo Uniforme (“LPAU”), 3 L.P.R.A. 2101, et seq, dispone, en cuanto a la reconsideración de órdenes o resoluciones finales en el procedimiento administrativo, lo siguiente:
“La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración....”. Secc. 3.15, 3 L.P.R.A. § 2165.
Por otra parte, la LPAU dispone:
“Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente, podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha en archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de la ley. ” 3 L.P.R.A. § 2172.
La agencia administrativa retiene la jurisdicción sobre un caso si acoge dentro del término provisto en LPAU una moción de reconsideración. Un recurso de revisión presentado ante el Tribunal de Apelaciones estando pendiente la decisión de la agencia sobre si acoge o no la moción de reconsideración sería prematuro y este Tribunal carecería de jurisdicción para atender el mismo.
Ello no impediría a las partes que presentaron a destiempo el recurso de revisión que acudan nuevamente, de manera diligente, ante el foro correspondiente dentro del término jurisdiccional para ello a solicitar revisión. Julia Padró v. Vidal, opinión del 14 de febrero de 2001, 2001 J.T.S. 18; Rodríguez v. Zegarra, 150 D.P.R. 64, 654 (2000); Ruiz v. P.R.T.Co., 150 D.P.R. 200, 200-201 (2000); Pérez v. C.R. Jiménez, Inc., 148 D.P.R. 153, 153-154 (1999); Hernández v. Marxuach Const. Co., 142 D.P.R. 492, 499 (1997).
Chrysler presentó una moción de reconsideración el 25 de noviembre de 2003, dentro del término de veinte (20) días para así hacerlo. Sin embargo, estando pendiente el plazo de quince (15) días para la decisión de DACO sobre si acogía o no la reconsideración, Alberic presentó ante este Tribunal un recurso de revisión. El recurso de Alberic era prematuro y este Tribunal carece de jurisdicción para atender su recurso.
El recurso de Chrysler fue presentado pasado el término para la consideración de DACO sobre si acogía la reconsideración y dentro del término para solicitar la revisión judicial, por lo que este Tribunal tiene jurisdicción para atenderlo. Procedemos a resolver.
*79 Ill
Concluyó DACO a base de la evidencia examinada y del informe del investigador que inspeccionó y probó la unidad que Alberic y Chrysler respondían solidariamente por los daños y perjuicios sufridos por los querellantes debido al incumplimiento contractual de no conformar el auto a la garantía a tenor con el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797, 10 R.P.R. §§ 250.1701-250.1737. Además, estableció que Alberic respondía por el fundamento de incumplir con el contrato de arrendamiento de obra a tenor con el Artículo 1077 del Código Civil. 31 L.P.R.A. § 3052.
En cuanto a Flagship, DACO determinó que no procedía la querella por no existir nexo causal que justificara la concesión de un remedio al no haber formado éste parte del contrato de arrendamiento de obra para las reparaciones posteriores que se le realizaron al vehículo.
Nos toca determinar si las determinaciones de hechos de DACO están sustentadas con evidencia sustancial en el expediente y si las conclusiones de derecho en tomo a la responsabilidad de las partes son razonables.
La revisión judicial de decisiones administrativas abarca tres (3) áreas, a saber: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos, conforme al criterio de la evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 93 (1997).
Las conclusiones de hechos de los organismos administrativos especializados como DACO merecen gran consideración y respeto por el Tribunal de Apelaciones si las mismas están sostenidas por evidencia sustancial. 3 L.P.R.A. Secc. 2175; Otero Mercado v. Toyota, opinión del 3 de febrero de 2005, 2005 J.T.S. 13; Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 532 (1993). El concepto de evidencia sustancial ha sido definido por el Tribunal Supremo como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997). Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. Otero Mercado v. Toyota, supra.
El motivo de establecer la regla de evidencia sustancial es evitar que el criterio del juez administrativo sea sustituido por el criterio del juez revisor. Misión Industrial de P.R. v. Junta de Planificación, 145 D.P.R. 908 (1998). Por lo tanto, de existir más de una interpretación razonable de los hechos, los tribunales, de ordinario, deben sostener la selección de la agencia y no sustituir su criterio por el de la agencia. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra. Esto significa que para que un tribunal pueda revisar las determinaciones de hechos de una agencia, primero debe examinar el expediente administrativo en su totalidad, incluyendo toda aquella evidencia que sostenga la determinación de la agencia como toda aquélla que la menoscabe. Luego, el tribunal, a la luz de la prueba presentada a la agencia, decidirá si la conclusión de la agencia es razonable.
Corresponde así a la parte que impugna la determinación de una agencia administrativa el peso de establecer que la misma se tomó en ausencia de evidencia sustancial. Véase, Henríquez Soto v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987). En igual medida, para alegar que la evidencia en la cual se fundamentaron las determinaciones de hechos de la agencia no es sustancial, la parte afectada deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda prudentemente concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Misión Industrial de P.R. v. Junta de Planificación, 146 D.P.R. 64, 131 (1998); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995).
Las conclusiones de derecho de la agencia, distinto a las determinaciones de hechos, podrán ser revisadas en todos sus aspectos por este foro, sin sujeción a norma o criterio alguno. Miranda v. C.E.E., 141 D.P.R. 775, 787 (1996). Esto no significa, sin embargo, que al ejercer su función revisora, los tribunales revisores descarten *80 libremente las conclusiones e interpretaciones de la agencia. Otero Mercado v. Toyota, supra. Por ello, el Tribunal Supremo ha reiterado en innumerables ocasiones que las determinaciones, conclusiones e interpretaciones incluidas en dichas decisiones tendrán gran deferencia al ser revisadas por este Tribunal. Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992). Al interpretar esta disposición, el Tribunal Supremo ha resuelto que el criterio bajo el cual un tribunal debe de revisar las determinaciones e interpretaciones de agencias administrativas, es el criterio de la razonabilidad, debiéndose sostener las mismas, siempre que la agencia no haya actuado arbitraria, ilegalmente o en abuso de discreción. T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., Opinión del 12 de abril de 1999, 99 J.T.S. 60; Misión Industrial de P.R. v. Junta de Planificación, 146 D.P.R. 64; Rivera Rivera v. Superintendente de la Policía, resolución del 30 de junio de 1998, 98 J.T.S. 88.
Esta deferencia en las determinaciones de derecho responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado, siendo éstas instrumentos necesarios para la interpretación de la ley. Reyes Salcedo v. Policía de P.R., supra, pág. 94.
IV
La Ley de Garantías de Vehículos de Motor, Ley Núm. 7 del 24 de septiembre de 1979, 10 L.P.R.A. §§ 2051-2065, según enmendada, tiene como propósito cardinal proteger al consumidor de vehículos de motor nuevos, asegurándole que sus intereses y las garantías de fábrica sean salvaguardados frente a los intereses del manufacturero y del distribuidor o vendedor. 10 L.P.R.A. § 2053. Esta ley establece que el distribuidor autorizado, el distribuidor independiente y el distribuidor o vendedor que venda a un consumidor un vehículo de motor nuevo, vendrá obligado a prestar efectivamente los servicios de garantía de fábrica. 10 L.P.R.A. § 2061.
DACO es la agencia encargada de velar por el fiel cumplimiento de la Ley de Garantías de Vehículos de Motor y por responsabilizar al fabricante o manufacturero por los daños que causen defectos de ‘‘fabricación, diseño, ensamblaje o manufactura”. 10 L.P.R.A. § 2060. Esta agencia posee, además, la facultad para adoptar las reglas y reglamentos que considere necesarios para cumplir los propósitos de esta pieza legislativa, conforme a los poderes y facultades que le confiere la Ley Orgánica del Departamento de Asuntos del Consumidor. 10 L.P.R.A. § 2063.
En el ejercicio de las facultades que le otorga la Ley de Garantías de Vehículos de Motor y la Ley Complementaria de Garantías de Vehículos de Motor, 10 L.P.R.A. §§ 2066-2070, DACO promulgó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797, 10 R.P.R. §§ 250.1701-250.1734, en adelante el Reglamento. Dicho Reglamento dispone que su interpretación deberá hacerse liberalmente a favor del consumidor. 10 R.P.R. § 250.1702. Además, establece en su Artículo 21.3 que DACO “podrá, a opción del comprador, decretar la resolución del contrato de venta de un vehículo de motor nuevo o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Advierte que lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso”. 10 R.P.R. § 250.1719.
No obstante, el Reglamento hace la salvedad de que “nada de lo dispuesto en el mismo limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos y la acción redhibitoria que reconoce el Código Civil”. 10 R.P.R. 250.1733.
Debido a que el contrato en controversia es uno de compraventa de un vehículo de motor, se rige supletoriamente por las disposiciones del Código Civil de Puerto Rico relacionadas a la compraventa de bienes muebles. Artículos 1334 al 1427 del Código Civil, 31 L.P.R.A. §§ 3741-3961; Ferrer Delgado v. G.M.C., 100 *81 D.P.R. 246, 254 (1971). Por tanto, una determinación de la agencia, a los efectos dispuestos en el Artículo 21.3 del Reglamento, debe estar en armonía con las disposiciones pertinentes del Código Civil, así como con la jurisprudencia interpretativa que permite dicho curso de acción. Domínguez v. Caguas Expressway Motors, Inc., 148 D.P.R. 387 (1999).
Procede, entonces, éxaminar dichas normas para adjudicar la procedencia de la determinación de DACO en el presente caso. El Tribunal Supremo ha asemejado la obligación que surge de la garantía expresa que extiende el fabricante de un vehículo a la garantía implícita que envuelve la responsabilidad de saneamiento por vicios ocultos a la que está obligado el vendedor, especialmente a tenor con las disposiciones de los Artículos 1350, 1363 y 1373 al 1375, inclusive, del Código Civil, 31 L.P.R.A. §§ 3801, 3831, y 3841-3843. Ferrer Delgado v. G.M.C., supra.
En virtud de las referidas disposiciones del Código Civil, recibido el precio, corresponde al vendedor entregar la cosa y asegurarle al comprador la posesión pacífica y útil de la misma. 31 L.P.R.A. §§ 3801 y 3831. El propósito o causa de la venta para el comprador es adquirir la cosa para servirse de ella y dicho propósito dejaría de realizarse si una vez hecha la entrega, el comprador se ve privado de la cosa o imposibilitado de aplicarla a los usos que le son propios. Ferrer Delgado v. G.M.C., supra. De aquí que suija la obligación de garantía que tiene el vendedor y a la cual el Código Civil llama obligación de saneamiento. Id. Dicha acción presenta dos modalidades: el saneamiento por evicción y el saneamiento por vicios ocultos en la cosa. Márquez v. Torres Campos, 111 D.P.R. 854, 861-862 (1982).
En los casos de saneamiento por defectos o vicios ocultos, “el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o podrá rebajar una cantidad proporcional del precio, a juicio de peritos”. 31 L.P.R.A. Secc. 3843. La acción de saneamiento por vicios ocultos tiene dos (2) vertientes por las que el comprador puede optar: la acción redhibitoria y la estimatoria o quantiminoris. Márquez v. Torres Campos, supra. Mediante la acción redhibitoria, el comprador elige la resolución del contrato que consiste en devolver el objeto y recibir el precio pagado y, en adición, puede obtener indemnización de los daños si el vendedor conocía el daño. Id. Mediante la acción estimatoria, el comprador elige recibir una rebaja del precio en atención a la disminución de valor ocasionada por el defecto. Id. Ambas acciones se consideran alternativas; es decir, a ejercerse a opción del comprador. Domínguez v. Caguas Expressway Motors, Inc., supra.
Para que proceda la acción redhibitoria, los vicios tienen que ser de tal naturaleza que la imperfección o defecto haga imposible el uso del objeto, o que el uso se vea disminuido al extremo de mermar considerablemente la utilidad o el valor de la cosa para el propósito para el cual fue adquirida. Domínguez v. Caguas Expressway Motors, Inc., supra; García Viera v. Cuidad Chevrolet, 110 D.P.R. 158 (1980); DACO v. Marcelino Mercury, Inc., 105 D.P.R. 80 (1976); Artículo 1373 del Código Civil, 31 L.P.R.A. Secc. 3841.
Para que los vicios ocultos puedan ser objeto de saneamiento: (1) no deben ser conocidos por el adquirente, (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis (6) meses contados desde la entrega de la cosa vendida. 31 L.P.R.A. Secc. 3847. Véase; Pérez v. VPH Motor Corp., opinión del 3 de noviembre de 2000, 2000 J.T.S. 177; Domínguez v. Caguas Expressway Motors, Inc., supra; Ferrer Delgado v. G.M.C., supra.
En estos casos le corresponde al comprador probar que el vehículo de motor no funciona bien, aunque no es necesario que los defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor y que el vendedor haya tenido la oportunidad de corregir el defecto. García Viera v. Ciudad Chevrolet, Inc., 110 D.P.R. 158, 162 (1986). Así mismo, se ha resuelto que corresponde al comprador demostrar que el vehículo que compró no funciona normalmente y que la parte querellada tuvo oportunidad de corregir el defecto, pero no *82 lo corrigió o no pudo corregirlo. Ferrer Delgado v. G.M.C., supra.
Una vez el comprador prueba lo anterior, procede que el vendedor, para poder quedar eximido de responsabilidad, demuestre que: (1) el comprador del vehículo le dio un uso indebido; (2) que el vehículo de motor no tenía defectos de fabxicación; y (3) que las reparaciones fueron adecuadas. Pérez Ríos v. Hull Dobbs, 107 D.P.R. 834 (1978); Ferrer Delgado v. G.M.C., supra.
De no demostrar la responsabilidad del comprador por el defecto, éste tiene derecho a que se le reembolse el precio pagado por el vehículo y los gastos en que necesariamente incurrió por motivo de los defectos o vicios del mismo. Ferrer Delgado v. G.M.C., supra. Si el vendedor del vehículo conocía los vicios o defectos, procede indemnizar al comprador por concepto de daños y peijuicios. El comprador también tiene derecho a que se le reembolsen las costas y a una suma razonable para honorarios de abogado. Id. El saneamiento no es sólo obligación del vendedor, sino también del fabricante en virtud de la garantía. Márquez v. Torres Campos, supra; Ferrer Delgado v. G.M.C., supra. Sin embargo, si la vendedora descargó responsablemente su deber de poner en vigor la garantía del fabricante, pero el defecto de fábrica no era susceptible de reparación, correspondería condenar al fabricante a pagarle por cualquier cantidad que ésta se viera obligada a pagar al dueño del vehículo. Nadal Fremaint v. Hull Dobbs, 102 D.P.R. 653, (1974).
El Artículo 1060 del Código Civil establece que toda persona que incumpla con sus obligaciones responde por los daños y perjuicios previstos o que se hayan podido prever al momento de constituirse la obligación y sean consecuencia necesaria de su falta de cumplimiento. 31 L.P.R.A. § 3024.
V
Flagship y Chrysler denegaron verbalmente la reparación en garantía del vehículo, pues entendían que los daños a la unidad se debieron a la infiltración de agua al motor al ser conducido negligentemente por los querellantes por un área inundada, lo que constituia una causal de exclusión de la garantía. La primera reparación fue hecha por Alberic y pagada por la compañía de seguros de los querellantes y por éstos mismos. Chrysler no otorgó garantía en la primera reparación por estar la misma excluida del contrato de garantía, según su interpretación. Sin embargo, surge de la prueba en el expediente que Chrysler pagó cuatro reparaciones y otra reparación en conjunto con Alberic en virtud del contrato de garantía del vehículo. Por lo cual, concluyó DACO que existían dos contratos: el de arrendamiento de obra para la reparación del vehículo efectuada por Alberic y el de garantía del vehículo. Ante las reparaciones deficientes y diagnósticos erróneos de Alberic y la inhabilidad de ambos, Alberic y Chrysler, de reparar los defectos del vehículo a pesar de las numerosas visitas al taller, los querellantes optaron por resolver el contrato de compraventa del vehículo, más la compensación por daños y peijuicios. DACO determinó que Alberic y Chrysler eran responsables solidariamente por los gastos incurridos y daños sufridos por los querellantes y les ordenó pagarles la cantidad de catorce mil ochenta y siete dólares con noventa y un centavos ($14,087.91), que incluye el balance en el pago de la unidad luego de ser entregada de ocho mil ochocientos noventa y nueve dólares con noventa y un centavos ($8,899.91), otra cantidad por la falta de uso del vehículo durante el tiempo de reparación de mil ciento ochenta y ocho dólares ($1,188.00), dos mil dólares ($2,000.00) en concepto de angustias mentales, mil quinientos dólares ($1,500.00) por el pago de honorarios de abogado y la devolución de quinientos dólares ($500.00) pagados por el querellante por la primera reparación a Alberic.
Los querellantes en este caso tenían derecho a que se le reembolsara el precio pagado por el vehículo, los gastos en que necesariamente incurrieron por motivo de los defectos o vicios del mismo y todos aquellos daños previsibles sufridos a consecuencia del incumplimiento de los contratos de obra y de la garantía del vehículo. Contrario a la posición de Chrysler y Alberic, DACO, dentro de su amplia facultad de conceder remedios, está facultado para otorgar compensación por daños y perjuicios. En Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756, 764-767 (1997), el Tribunal Supremo consideró expresamente esta controversia y concluyó que es válida la delegación de las agencias del poder de otorgar compensación por daños, ya sea porque *83 específicamente en la ley habilitadora de la agencia se le concede dicha facultad o porque está consignado en su amplia facultad para conceder remedios.
DACO concluyó que era previsible tanto para Alberic como para Chrysler que por la naturaleza de la reparación contenida en el contrato de arrendamiento de obra y servicio, que si las reparaciones no eran efectuadas correctamente, podrían dejar inoperante el vehículo y, en su consecuencia, los querellantes se verían obligados a disponer del mismo y les impuso una compensación por los gastos incurridos a los querellantes por daños y perjuicios. Coincidimos con DACO.
VI
En cuanto a Flagship, DACO determinó que no procedía la querella por no existir nexo causal que justificara la concesión de un remedio. No estamos de acuerdo con DACO. Procedemos a examinar este asunto a pesar de no estar planteado en el recurso de Chrysler.
Aunque nuestro sistema de derecho es uno rogado y de carácter adversativo, el Tribunal Supremo ha resuelto que con el propósito de hacer la mejor justicia, aun cuando la parte recurrente no lo señale o no lo levante como error, los tribunales entenderán en todas aquellas cuestiones que a su juicio ameritan ser consideradas y resueltas en un recurso. Rodríguez Cruz v. Padilla, 125 D.P.R. 486 (1990); Dávila v. Valdejully, 84 D.P.R. 101 (1961).
Los tribunales deben conceder lo que en derecho proceda, aunque ello no haya sido perfectamente solicitado. Los foros judiciales deben hacer lo que esté a su alcance para que los casos se resuelvan en sus méritos. Véase Ortiz Rivera v. Puerto Rico Telephone Co. et als, opinión del 10 de agosto de 2004, 2004 J.T.S. 139; Soto López v. Colón, 143 D.P.R. 282, 291 (1997); Morales Mejias v. Met. Pack. & Ware. Co., 86 D.P.R. 3, 11-12 (1962); Dávila v. Valldejully, supra.
Ello nos obliga a entender, motu propio, en dicho punto.
Tanto Chrysler, como manufacturero; Alberic, como concesionario del manufacturero que realizó las reparaciones bajo garantía; así como Flagship, vendedor y concesionario del manufacturero que proveyó el vehículo, estaban obligados por la Ley de Garantías de Vehículos de Motor y el Reglamento a prestar los servicios de garantía; que el vehículo funcionara. La propia agencia, luego de un re-examen de las grabaciones de las vistas, determinó que los querellantes hicieron una solicitud a Chrysler y a Flagship, como proveedor de la unidad, para que la misma fuera reemplazada debido a los múltiples desperfectos en el vehículo, la cual fue denegada. Cabe señalar que después de la primera reparación, todas las reparaciones posteriores como la reparación del escape de aceite, radiador, bomba del servoguía (“power steering”), bomba de gasolina, batería, árbol de eleva (“camshaft”) y los desperfectos encontrados en la prueba de campo como el problema en los relojes del marcamillas, medidor de combustible, operadores de ventanas, sistema de aire acondicionado, golpes en la transmisión y calentamiento anormal del vehículo, estaban cubiertas por la garantía de fábrica y no surge del expediente que estuvieran relacionadas con la inundación del vehículo.
Modificamos la Resolución recurrida a los efectos de incluir a Flagship como responsable solidario por los daños sufridos por los querellantes.
VII
En cuanto a la imposición de honorarios de abogado, la Ley de Procedimiento Administrativo Uniforme establece que las agencias administrativas tienen facultad para imponer honorarios de abogados en las mismas circunstancias en que procede imponer honorarios bajo la Regla 44 de Procedimiento Civil. 3 L.P.R.A. § 2170 (c). El propósito de los honorarios de abogados es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a *84 asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. Fernández v. S.J. Cement, 118 D.P.R. 713 (1987).
La imposición de honorarios descansa en la sana discreción de la agencia. Raoca Plumbing v. Trans World, 114 D.P.R. 464 (1983). Cuando una agencia administrativa ejerce su discreción al imponer honorarios de abogados, dicha determinación no será alterada por los tribunales a menos que haya mediado un abuso en ella.
En el caso de autos, no encontramos indicio alguno de que DACO abusara de su discreción en la imposición de honorarios de abogados.
Por los fundamentos expresados, modificamos la resolución recurrida solamente a los efectos de incluir a Flagship como responsable solidario junto con Alberic y Chrysler por los daños sufridos por los querellantes por la cantidad de catorce mil ochenta y siete dólares con noventa y un centavos ($14,087.91).
Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones